IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| SHAWN G.[1], <br><br>        Plaintiff, <br><br>v. <br><br>NANCY A. BERRYHILL, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security, <br><br>        Defendant. | Case No. 3:18-cv-312-SI <br><br>**OPINION AND ORDER** |

Merrill Schneider, SCHNEIDER, KERR, & ROBICHAUX, P.O. Box 14490, Portland, OR 97293. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Erin F. Highland, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Shawn G. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying Plaintiff's application for application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the following reasons, the Commissioner's opinion is reversed and remanded for further proceedings.

## STANDARD OF REVIEW:

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

### A. Plaintiff's Application

Plaintiff filed an application for both DIB and SSI on July 5th, 2016. AR 312-15; 316-22. Plaintiff's date of birth is March 4, 1980, and he was 30 years old on the alleged disability onset date of July 10, 2010. AR 205. Plaintiff had previously filed applications that were denied on May 25, 2012 and August 14, 2015. AR 41. Plaintiff's 2016 applications were denied initially and upon reconsideration, and Plaintiff timely requested a hearing before an ALJ, which was held on June 26, 2017. *Id.* After the hearing, ALJ John Sullivan issued an adverse decision dated August 25, 2017. AR 38. Plaintiff now seeks review in this Court.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ first found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015. AR 44. Thus, for Plaintiff's DIB claim, he must establish disability on or before that date. The ALJ dismissed Plaintiff's claims for the time period before August 14, 2015, pursuant to the doctrine of claim preclusion. For the time period August 15, 2015, and after, the ALJ went through the five-step analysis.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity after August 15, 2015. *Id.* At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar degenerative disc disease, chronic bronchitis, and depression. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in the regulations. *Id.*

The ALJ then determined that Plaintiff retained the RFC to perform light work with the following limitations:

> [Plaintiff] can lift/carry 20 pounds occasionally and 10 pounds frequently. He can sit for six hours in an eight-hour workday. [He] can stand for two hours and walk for two hours in an eight-hour

> workday. He can push and pull as much as he can lift and carry. He can occasionally climb ramps and stairs but can never climb ladders, ropes, or scaffolds. [He] can occasionally stoop, kneel, crouch, and crawl. He can never work at unprotected heights, near moving mechanical parts, and can never operate a motor vehicle. [He] is limited to performing simple, routine tasks. He is a limited to simple work-related decisions. He can occasionally respond appropriately to coworkers and the public. When dealing with changes in the work setting, he is limited to simple work-related decisions. [His] time off task can be accommodated by normal breaks.

AR 46.

At step four, the ALJ found Plaintiff unable to perform any past relevant work. AR 50. At step five, the ALJ found Plaintiff capable of performing three jobs that exist in significant numbers in the national economy, including hand packager, small products assembler, and mail clerk. AR 50-51. The ALJ thus concluded that Plaintiff was not disabled. AR 51.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (A) failing to provide reasons germane to support his rejection of "other" medical source testimony provided by Brian Rost, P.T., and Aaron Lee, P.A.-C.; and (B) failing to provide substantial evidence in support of the ALJ's step five findings about work existing in significant numbers in the national economy.

**A. Rejection of Other Medical Source Testimony**

Social Security Rule ("SSR") 06-03p in effect at the time Plaintiff filed his claim,[2] defined "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech pathologists. SSR 06-03p, 2006

---

[2] For claims filed on or after March 27, 2017, the Commissioner has rescinded SSR-06-03p, broadened the definition of acceptable medical sources to include Advanced Practice Registered Nurses (such as nurse practitioners), audiologists, and physician assistants for impairments within their licensed scope of practice, and clarified that all medical sources, not

WL 2329939, at *1 (Aug. 9, 2006). Health care providers who are not "acceptable medical sources," such as "nurse practitioners, physician's assistants, chiropractors, audiologists, and therapists," are still considered "medical sources" under the regulations, and the ALJ can use these other medical source opinions in determining the "severity of [the individual's] impairment(s) and how it affects [the individual's] ability to work." SSR 06-03p, 2006 WL 2329939, at *2; 20 C.F.R. § 404.1513(d). An "other" medical source may not, however, provide medical opinions or be given "controlling" weight as a treating medical source. *See* SSR 06-03p, 2006 WL 2329939, at *5.

An ALJ may not reject the competent testimony of "other" medical sources without comment. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). To reject the competent testimony of "other" medical sources, the ALJ need only give "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). The ALJ may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The ALJ's proffered reasons for rejecting lay witness testimony must be specific, as well as germane. *Bruce v. Astrue*, 557 F33d 1113, 1115 (9th Cir. 2009).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). Where an ALJ ignores uncontradicted lay witness testimony that is highly probative of the claimant's condition, "a reviewing court cannot consider the error

---

just acceptable medical sources, can provide evidence that will be considered medical opinions. *See* 20 C.F.R. §§ 404.1502, 416.902; 82 F. Reg. 8544; 82 F. Reg. 15263.

harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

If a medical professional provides testimony in the form of a standardized check-box questionnaire, the ALJ may disregard that testimony if it is not supported by an explanation or if it is inconsistent with other medical evidence. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *see also Molina*, 674 F.3d at 1111-12. If a check-box questionnaire, however, is "based on significant experience . . . and supported by numerous records . . . [it is] entitled to weight that an otherwise unsupported and unexplained check-box form would not merit." *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014); *see also Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017) ("[T]he fact . . . an 'other source[]' provided information in a check-box form provides no reason to reject her opinions, much less a germane reason.")

Mr. Rost is a physical therapist ("P.T."), and Mr. Lee is a certified physician's assistant ("P.A.-C"). The parties do not dispute that Mr. Rost and Mr. Lee both qualify as "other" medical sources. The ALJ stated that he considered opinion evidence offered by both Mr. Rost and Mr. Lee, but he disregarded each man's evidence for the same two reasons: (1) neither man is an acceptable medical source, and (2) both men submitted their evidence as "checked boxes on a form but [they] did not provide any objective medical evidence to support [their] assessment of the claimant." AR 48. The parties do not dispute that the ALJ was incorrect to disregard opinion evidence presented by Mr. Rost and Mr. Lee because they are not acceptable medical sources. Defendant argues that this is a harmless error because the ALJ has still provided a reason germane for dismissing the testimony of Mr. Rost and Mr. Lee. Plaintiff argues, however, that the ALJ's "checked boxes" rationale for dismissing other source testimony does not itself qualify as a germane reason.

### 1. Mr. Rost

Mr. Rost met with Plaintiff for eight physical therapy sessions between November 2016 and January 2017. Mr. Rost made therapy reports, in which he noted that Plaintiff had good "Rehab Potential" for his lower extremity weakness, spinal inflammation, and difficulty with bending and lifting. AR 703. In his fourth report, Mr. Rost noted that Plaintiff was "showing more objective progress than subjective progress" and that Plaintiff "[w]ill continue to progress slowly." *Id.* During or after Plaintiff's eighth session, Mr. Rost wrote in a discharge summary that Plaintiff's progress was worsening. AR 705-07. "[Plaintiff's] pain level are [sic] unchanged and he is not even tolerating light therapy." AR 705. Mr. Rost further noted that during the lower body muscle tests, Plaintiff was "not tolerating even light isometric strengthening without sever [sic] flare-up." AR 706. At the end of the discharge summary, Mr. Rost wrote an updated statement about Plaintiff's rehab potential: "Poor (no improvement shown with manual therapy, therex, modalities[])." *Id.* Even during Plaintiff's final therapy session, however, Mr. Rost noted that Plaintiff was able to bend forward so his hand could reach his mid-shins. AR 706.

Mr. Rost filled out a check-box questionnaire dated May 18, 2017. Mr. Rost checked boxes to indicate that (1) Plaintiff had limited ability to "push and/or pull" with both upper and lower extremities and (2) Plaintiff would never be able to perform the following actions: "Stooping/Bending," "Kneeling," and "Crouching." AR 716. Mr. Rost wrote that Plaintiff's limited use of his lower extremities resulted from an increase in back pain that accompanies "any stabilization of [Plaintiff's] core." AR 717. On the form's last page, Mr. Rost checked a box indicating that he would expect Plaintiff "to miss 16 hours . . . or more per month from even a simple, routine job because of [Plaintiff's] impairments." AR 717. Mr. Rost explained his reasoning: "Back was very limiting for even a 1 hour PT appt. Was often unable to get to appointments due to p[ai]n." AR 717.

The ALJ's only permissible reason for discounting Mr. Rost's check-box conclusions is that he "did not provide *any* objective evidence to support his assessment of [Plaintiff]." AR 48 (emphasis added). The question before the Court is whether this finding by the ALJ is supported by substantial evidence in the record. Plaintiff points to several items in the record that support Mr. Rost's conclusions. Defendant points to some contradictions, such as Plaintiff being able to bend in his final visit with Mr. Rost, and argues that Plaintiff is asking the Court to weigh the evidence. Plaintiff, however, is asking the Court to determine whether the ALJ's finding that there was *no* objective evidence supporting Mr. Rost's conclusions is supported by substantial evidence in the record. It is not. Mr. Rost's treatment records contain information supporting Mr. Rost's checklist testimony regarding the severity of Plaintiff's impairments. They also contain information contradicting or that otherwise do not support Mr. Rost's conclusions, as Defendant points out. Weighing this evidence is for the ALJ. The problem with the current opinion is that the ALJ did not perform such an analysis. Instead, the ALJ simply stated (incorrectly) that there was no objective evidence in the record supporting Mr. Rost's conclusions. Accordingly, the ALJ did not provide a germane reason to discount Mr. Rost's opinion.

2. **Mr. Lee**

Mr. Lee was Plaintiff's primary care provider, starting in November 2016. During or after Plaintiff's first appointment, Mr. Lee wrote a report noting that Plaintiff had a "normal gait" and the ability to "walk on toes and heels." AR 688. Mr. Lee also reported that Plaintiff was "[a]ble to squat down to 90 degrees and stand back up" and able to "[f]orward bend to 45 degrees due to pain." AR 688. Mr. Lee wrote another report during or after Plaintiff's medical exam, dated April 12, 2017. In that report, Mr. Lee noted that Plaintiff had a single-photon emission computerized tomography ("SPECT") scan during the previous month. Mr. Lee wrote that the SPECT scan only demonstrated a "mild focal uptake at L5-S1." AR 711. Mr. Lee also noted that

Plaintiff's physical therapy with Mr. Rost seemed "to be flaring up [Plaintiff's] back some." AR 714.

Mr. Lee filled out a check box questionnaire dated May 15, 2017. Mr. Lee checked boxes indicating that Plaintiff would never be able to perform the following actions: "Climbing," "Balancing," "Stooping/Bending," "Kneeling," "Crouching," and "Crawling." AR 719. Mr. Lee wrote the following explanation about Plaintiff's lower extremity limitations: "Lower extremity movement involving walking, squatting, standing, climbing causing increased symptoms in [Plaintiff's] low back." AR 720. Mr. Lee checked a box indicating that he would expect Plaintiff "to miss 16 hours . . . or more per month from even a simple, routine job because of [Plaintiff's] impairments." *Id.* Mr. Lee explained his reasoning as follows: "[Plaintiff's] back symptoms would prevent him from maintaining regular tasks. Increased activity would exaccerbate [sic] symptoms and likely cause absences from work." AR 720.

The questionnaire included a section titled "Residual Physical Functional Capacity Assessment." AR 719. Mr. Lee checked boxes in that section to indicate the following: (1) the amount of weight that Plaintiff is able to "lift and/or carry" throughout a workday; (2) the length of time that Plaintiff is able to sit down; and (3) the length of time that Plaintiff is able to "stand and/or walk." *Id.* Mr. Lee's one and only elaboration is a note that Plaintiff "require[s] regular breaks to change positions and lie on his stomach, due to low back pain." AR 719. By contrast, Mr. Rost did not check any of those boxes in the same section of his questionnaire. AR 716. Mr. Rost's only response was a note on the righthand margin: "Not able to assess." *Id.*

The ALJ stated that Mr. Lee "provided no objective medical findings to support his assessment of [Plaintiff]." AR 49. Unlike with Mr. Rost, the Court finds that this conclusion is supported by substantial evidence in the record.

Mr. Lee cited to a SPECT scan that found only a mild abnormality in Plaintiff's lower spine. Mr. Lee did not provide sufficient detail in his questionnaire to support his opinion that Plaintiff would never be able to stoop, bend, kneel, or crouch. Mr. Lee's evaluation stated that Plaintiff could bend forward up to 45 degrees. AR 688. This does not provide support to indicate that Plaintiff can *never* bend while performing tasks at work. Furthermore, Mr. Lee did not sufficiently explain his checkbox statements about Plaintiff's limitations with standing, walking, sitting, lifting, and carrying. Mr. Lee's chart notes do not provide sufficient evidence to support these cursory checkbox statements. Unlike Mr. Rost's chart notes—that show Plaintiff in a pattern of increasing pain—Mr. Lee's medical records are not sufficiently detailed to support his conclusion that Plaintiff will be forced to miss 16 or more hours of work per month. As a result, the Court finds that the ALJ has given a reason that is both specific and germane for disregarding Mr. Lee's opinion.

**B.  Work in Significant Numbers in the National Economy**

At step five in the sequential analysis, the burden of proof shifts to the Commissioner of Social Security to "identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); *see also* 20 C.F.R. §§ 404.1566, 416.966. In so doing, the ALJ must consider the claimant's RFC as applied to the *Dictionary of Occupational Titles* ("DOT"),[3] 20 C.F.R. § 416.966(d)(1), and the following vocational factors: age, education, and work experience. 20 C.F.R. § 404.1560(c)(1).

---

[3] *The Dictionary of Occupational Titles* is a resource compiled by the Department of Labor detailing the requirements for different occupations. *See* 20 C.F.R. § 416.966(d)(1).

An ALJ may rely on the testimony of a vocational expert ("VE") to determine whether a claimant retains the ability to perform other work in the national or regional economy at step five. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). Any hypothetical that the ALJ presents to a VE must be derived from the claimant's RFC, and as such it "must set out all the limitations and restrictions of the particular claimant." *Valentine v. Comm. Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). The Ninth Circuit has defined the "discrete functions" of the ALJ and the VE: "The [ALJ] weighs the evidence for probity and credibility. The [VE] merely translates factual scenarios into realistic job market probabilities." *Sample*, 694 F.2d at 643.

"[A]n ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Johnson*, 60 F.3d at 1435. If the VE's opinion that the applicant is able to work conflicts with, or seems to conflict with, the requirements listed in the DOT, then the ALJ must ask the VE to reconcile the conflict before relying on the VE to determine whether the claimant is disabled. SSR 00-4P, *available at* 2000 WL 1898704, at *2 (2000). "For a difference between an expert's testimony and [the DOT's] listings to be fairly characterized as a conflict, it must be obvious or apparent. This means that the testimony must be at odds with [the DOT's] listing of job requirements that are essential, integral, or expected." *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016) (holding that the claimant's inability to reach overhead does not conflict with a DOT requirement for a cashier to engage in frequent reaching).

At step five, the ALJ concluded that Plaintiff could work in at least three representative occupations. AR 51. The parties do not dispute that two of the occupations—mail clerk and small products assembler—are *not* appropriate for a person with Plaintiff's RFC. The parties

dispute whether the occupation of hand packager presents an apparent conflict with the DOT and involves a sufficient number of jobs to qualify as "significant."

1. **Conflict Between RFC and the DOT**

The VE testified that Plaintiff could perform the requisite tasks for a job as a hand packager.[4] AR 28. Hand packager is a job classified as "light work," and as such, "it requires a good deal of walking or standing." SSR 83-10, at *5. The ALJ acknowledged a conflict between the walking and standing requirements of the hand packager job and Plaintiff's RFC, which limited his standing and walking time. AR 28. The VE responded that "not all but most of the packager positions do allow for sit/stand." *Id.* The VE testified that there are 22,400 hand packager jobs in the national economy, and "at least 75%" of those jobs allow for a sit/stand option. AR 28-29. After multiplying those numbers, the VE testified that there are 16,800 hand packager jobs that Plaintiff could perform. AR 29.

Plaintiff argues that the VE's testimony regarding sit and stand options for the hand packager job does not resolve the conflict with the DOT description of that job regarding walking and Plaintiff's RFC. According to the DOT, a worker performing that job "[p]acks inspected product in cartons . . . and *carries cartons to storage area.*" DOT § 559.687-074, *available at* 1991 WL 683797 (1991) (emphasis added). Plaintiff argues that although the packing part might allow for sit and stand options, the carton-carrying requirement necessarily entails both standing and walking.

The carton-carrying requirement is an essential, integral, and expected requirement of the hand packager job based on the DOT description. According to the DOT description, once the hand packager has packed the inspected products into cartons, the hand packager needs to carry

---

[4] DOT § 559.687-074.

those cartons into a storage area. The products need to end up in storage, and it is the hand packager's job to carry them there. Plaintiff argues this is a obvious and apparent conflict with Plaintiff's limited standing restriction in the RFC and the VE's testimony regarding 75 percent of these jobs having the option to sit or stand does not resolve this conflict.

Defendant relies on *Gutierrez v. Colvin* to argue that there is no obvious and apparent conflict between the DOT and Plaintiff's RFC. 844 F.3d 804 (9th Cir. 2016). In *Gutierrez*, the VE testified that a claimant who had difficulty reaching overhead was still qualified to work as a cashier, a job that involves frequent reaching. *Id.* at 808. The court in *Gutierrez* found no obvious and apparent conflict between the DOT description of a cashier's job and the VE's testimony. *Id.* The court relied on common experience to support the conclusion that a cashier's job can involve frequent reaching without requiring the ability to reach overhead.[5] *Id.*

*Gutierrez* does not support a finding in this case that there is no apparent or obvious conflict. Plaintiff has a limited ability to stand and walk, and the carton-carrying requirement necessitates that Plaintiff must first stand and then walk. The common experience that carrying something to another room requires standing and walking counsels the opposite finding from that in *Gutierrez*. The unknown factor is whether hand packager jobs (or a smaller percentage of hand packager jobs) involve the carton-carrying requirement as actually performed. But as discussed in the DOT, this position involves an obvious and apparent conflict.

The VE's testimony that 75 percent of hand packager jobs allow for an option to sit or stand does not address the carton-carrying portion of the job, but the packing portion of the job. The VE provided no testimony that the average hand packager job as performed does not include

---

[5] "But anyone who's made a trip to the corner grocery store knows that while a clerk stocking shelves has to reach overhead frequently, the typical cashier never has to." *Gutierrez v. Colvin*, 844 F.3d at 808.

PAGE 15 – OPINION AND ORDER

the carton-carrying requirement, or how the carton-carrying requirement does not conflict with Plaintiff's RFC. Therefore, the VE's proposed sit-or-stand options do not resolve the conflict between the hand packager job and Plaintiff's two-hour-per-day walking limitations.

Defendant cites the policy ruling SSR 83-12 to argue that a person unable to meet the standing and walking requirements of light work may still be able to perform such jobs if a sit-or-stand option is permitted. That ruling does not support Defendant's argument. SSR 83-12 discusses "jobs in the national economy—typically professional and managerial ones—in which a person can sit or stand with a degree of choice." 1983 WL 31253, *4. That ruling does not discuss relatively low-skill jobs like hand packager; rather, it discusses "typically professional and managerial" jobs—*i.e.*, office jobs with a higher level of professionalism and choice regarding standing and walking. *Id.* Therefore, that ruling does not provide the Court with guidance for its evaluation of sit-or-stand options in the carton-carrying portion of the hand packager job.

Defendant cites another ruling, SSR 00-4p, for the principle that, "[e]vidence from VEs . . . can include information not listed in the DOT. The DOT contains information about most, but not all, occupations." 2000 WL 1898704, *2-3. Defendant argues that this ruling supports the ALJ's reliance on VE testimony about sit/stand options that are not included in the hand packager description of the DOT. Defendant's reliance on this ruling is not persuasive. If anything, this ruling highlights the ALJ's failure to resolve the conflict.

> Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between [VE evidence] and the DOT, the adjudicator must elicit a reasonable explanation for the conflict *before* relying on [VE evidence] to support a determination or decision about whether the claimant is disabled.

SSR 00-4p, 2000 WL 1898704, at *2 (emphasis added).

PAGE 16 – OPINION AND ORDER

The ALJ did not resolve the apparent and obvious conflict between carrying packed cartons to storage and Plaintiff's standing and walking limitations before relying on VE testimony about options to sit or stand. AR 50-51. Indeed, the record contains no evidence that the ALJ realized there was a conflict that involves the carton carrying requirement. During his examination of the VE, the ALJ asked, "And is your testimony consistent with the *Dictionary of Occupational Titles*?" AR 30. The VE's unambiguous response was "Yes, sir." *Id.* Neither the ALJ nor the VE made any mention of the carton carrying requirement, and the Court finds that this conflict has not been resolved.

Defendant cites the Ninth Circuit's unpublished decision *Dewey v. Colvin* for the holding that there can be no conflict between a VE's testimony and the DOT when the DOT is silent about whether a job allows for a sit-or-stand option. 650 F. App'x 512, 514 (9th Cir. 2016). The carton-carrying requirement, however, does not avoid this problem because there is standing involved, at least initially, in the performance of that requirement. Further, the option to sit or stand does not resolve the conflict surrounding the walking component of the carton-carrying requirement. Even if the Court were willing to seek guidance from an unpublished opinion, *Dewey* is not persuasive authority for resolving the conflict in the case at bar.

The Court finds that Defendant has not resolved the apparent and obvious conflict between the carton-carrying requirement in the DOT description of hand packager and Plaintiff's RFC. The VE's testimony about the option to sit or stand in this job position did not address this conflict.

**2. Significant Number in the National Economy**

There is no bright-line rule concerning the number of jobs that qualifies as significant in the national economy. *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528-29 (9th Cir. 2014). In *Guitierrez*, the Ninth Circuit upheld an ALJ ruling that 25,000 jobs in the national economy is

a significant number, but the court noted that this decision was a "close call." *Id.* at 528. District courts within this circuit have varied on the number of jobs accepted as constituting a significant number in the national economy. *See, e.g.*, *Lisa L. v. Comm'r of Soc. Sec.*, 2018 WL 6334996, at *4 (D. Or. Dec. 5, 2018) (concluding that "11,084 jobs does not meet the significant number standard"); *Davis v. Comm'r of Soc. Sec.*, 2018 WL 1779341, at *6 (E.D. Cal. Apr. 12, 2018) (concluding that 15,000 national jobs are significant); *Watkins v. Comm'r Soc. Sec. Admin.*, 2016 WL 4445467, at *7 (D. Or. Aug. 22, 2016) (finding that "11,000 order caller jobs in the national economy does not represent a significant number"); *Aguilar v. Colvin*, 2016 WL 3660296, at *3 (C.D. Cal. July 8, 2016) (finding that 11,850 national jobs are significant); *Murphy v. Colvin*, 2013 WL 5371955, at *14 (W.D. Wash. Sept. 24, 2013) (finding 17,782 national jobs significant).

    Defendant argues that 16,800 jobs is a significant number in the national economy. The ALJ based this figure on the VE's testimony that "at least 75%" of hand packager jobs allow for a sit/stand option." AR 28-29. The Court, however, has found that the DOT description for the hand packager job and Plaintiff's RFC conflict, with the VE's testimony failing to resolve the conflict. As such, the Court is remanding that conflict to the ALJ for further proceedings consistent with this Opinion. On remand, a VE may conclude that the carton-carrying requirement renders the hand packager job incompatible with Plaintiff's RFC or that it reduces the available hand packager jobs by more than 25 percent and thus reduces the number of available positions below 16,800 jobs. Additionally, an ALJ may find different jobs that Plaintiff can perform other than hand packager. Accordingly, the Court need not resolve whether 16,800 jobs constitutes a significant number in the national economy because it is unknown whether that is the number of jobs that Plaintiff ultimately will be found to be able to perform.

## C. Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings and whether the record is fully developed and free from conflicts and ambiguities. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015).

The record here is not free of contradictions or ambiguities. Nor is Plaintiff arguing for remand for benefits. Accordingly, this case is remanded for further proceedings consistent with this Opinion. The Commissioner must properly evaluate the evidence from Mr. Rost. The Commissioner may alter the RFC if needed and then must make appropriate step five findings.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 30th day of April, 2019.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge